UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

_____

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 1:18-cv-00040-LM |
| | ) | |
| TRUSTEES OF DARTMOUTH COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**RELEVANT FACTS**

For the limited purpose of its Motion to Dismiss, Defendant Trustees of Dartmouth College ("Dartmouth" or "the College") accepts as true the non-conclusory, factual allegations of the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.    **The events at issue**

John Doe and the female student identified in the Complaint as Sally Smith were together the evening of August 4 into the morning of August 5, 2016. Compl. ¶¶ 16-18. Doe claims that he became intoxicated to the point that he "blacked out" and has no memory of the events of that night. *Id.* ¶¶ 2, 17, 24.

The next morning, Doe woke up to find Smith in his bed and they had consensual intercourse. *Id.* ¶ 18. Smith told Doe they also had a sexual encounter during the night, which he did not remember. *Id.* She told him that things had "gotten rough," consistent with a prior sexual encounter in which Smith expressed interest in rough sex and slapped Doe. *Id.* ¶¶ 15, 18.

After Smith left, Doe noticed that there were scratches on his arms and back, his genitals were extremely painful, and his nipple was bleeding. *Id.* ¶ 21. He then received text messages

1

from Smith, which included pictures of bruises on her body.  *Id.* ¶ 22.  In her texts, Smith said that the night had been "fun."  *Id.*

Doe and Smith met up later that day.  *Id.* ¶ 23.  Smith told Doe that they had engaged in rough foreplay, both slapping each other and falling off the bed.  *Id.*  Smith also made a veiled threat that she would make a complaint against Doe if he did not have sex with her again, but Doe declined.  *Id.* ¶ 26.  Thereafter, Doe avoided Smith.  *Id.* ¶ 27.

### B.      The complaints, investigation, and findings

In October 2016, Smith made a complaint to Dartmouth's Title IX coordinator,[1] alleging that Doe physically harmed her during their encounter on August 4-5, 2016.  *Id.* ¶ 28.  According to Doe's Complaint, Smith made "no allegation of sexual misconduct" and told the Title IX coordinator that the sexual behavior that night and the following morning was consensual.  Compl. ¶¶ 3, 28.  However, as documented in the investigation report and the Title IX coordinator's notes attached to the report, Smith also told the Title IX coordinator that Doe "sexually assaulted" her by engaging in "non-consensual sexual contact, including but not limited to, fondling and dry humping while naked, and simple assault."  A copy of the investigation report is attached as Exhibit A.[2]

Following Smith's complaint to the Title IX coordinator, Dartmouth opened a sexual misconduct investigation under its Unified Procedures for Sexual Assault ("Unified

---

[1] A Title IX coordinator is the person designated by a university to coordinate its efforts to comply with Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in any educational program that receives federal funds.  *See* U.S. Department of Education, Dear Colleague Letter, Title IX Coordinators, April 24, 2015, available at https://www2.ed.gov/about/offices/list/ocr/docs/dcl-title-ix-coordinators-letter-201504.pdf.

[2] In ruling on a motion to dismiss, it is "well-established" that the court "'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'"  *Clorox Co. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir. 2000) (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996)).  If the plaintiff "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading." *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir. 1988).  The names in the investigation report have been redacted consistent with the pseudonyms used in the Complaint.

Procedures"). *Id.* ¶ 29.  A copy of the Unified Procedures is attached as Exhibit B.  The Unified Procedures apply to complaints of "Sexual Assault; Aiding, Abetting, or Inciting Sexual Assault; and Retaliation."  Ex. B at 3.  "Sexual Assault" is defined as "unwanted or unwelcome touching of a sexual nature, including: fondling; penetration of the mouth, anus, or vagina, however slight, with a body part or object; or other sexual activity that occurs without valid consent."  *Id.* at 6.

Under the Unified Procedures, a complaint is reviewed by the Title IX coordinator who makes a determination whether the allegations, if proven, would constitute a violation of Dartmouth's policy against sexual misconduct.  *Id.* at 10.  In that event, the Director of Judicial Affairs prepares the charge and designates an investigator to conduct an investigation and prepare a report.  *Id.*  The investigator speaks with the complainant, the respondent and other witnesses and solicits and reviews other relevant evidence.  *Id.*  Before the investigator's report is finalized, the respondent has the opportunity to review the report and submit comments in writing.  *Id.* at 12.  The final report sets forth the investigator's factual findings, the investigator's conclusion as to whether the respondent violated College policy as alleged, and the investigator's rationale.  *Id.* at 12.  If the investigator finds that the respondent committed a conduct violation, the Director of Judicial Affairs convenes a Sanctioning Panel.  *Id.*  Each party may submit a statement of position to the Panel.  *Id.* at 13.  The Panel then determines the appropriate sanction, taking into consideration specific factors listed in the policy.  *Id.* at 13-14.

Dartmouth hired a former prosecutor to investigate Smith's complaint against Doe. Compl. ¶ 31.  On November 2, 2016, Doe filed a complaint against Smith for physical assault and for engaging in sexual acts with him on the night of August 4 when he was incapacitated and unable to consent.  *Id.* ¶ 32.  The same investigator was tasked with investigating Doe's complaint against Smith.  *Id.*

Doe understandably made no argument at the time that the complaints should be handled pursuant the College's Disciplinary Procedures, which apply to conduct matters not involving allegations of sexual assault. The Unified Procedures provide:

> If, prior to or during the investigation of a complaint under this policy, either party alleges a violation of other College policies or standards of conduct arising from the same set of facts [as the alleged sexual misconduct], all claims will ordinarily be investigated and have responsibility determined by the Investigator assigned to investigate the complaint under this policy, with the sanction for any finding of responsibility for claims other than those under this policy determined by the disciplinary system of the Responding Person's school [in this case Dartmouth's Disciplinary Procedures].

*Id*. ¶ 48.

The investigator conducted interviews and reviewed other relevant evidence including photographs and text messages, including texts from Smith to friends in which she stated that Doe had been "super blacked." *Id.* ¶¶ 33-35. During Smith's interview, she told the investigator that the sexual intercourse itself was consensual. *Id.* ¶ 38.

In January 2017, the investigator prepared a preliminary report of her factual findings, which she shared with Doe and Smith. *Id.* ¶ 42. In February 2017, Doe (through counsel) asked Dartmouth if he and Smith could resolve the matter by agreement. *Id.* ¶ 43. Dartmouth's General Counsel at the time responded that the investigation would continue, but if a finding of responsibility were made, then the "sanctioning panel" could be told about the parties' agreement. *Id.* ¶ 43.

Also in February 2017, Doe provided the investigator with a detailed response to the preliminary report, in which he highlighted what he believed to be evidence that the investigator failed to credit and discrepancies in Smith's testimony. *Id.* ¶ 45. The investigator made a final determination that Doe was responsible for a violation of Standard I of the College's Code of Conduct (putting another student at risk of physical harm) but not responsible for a violation of

Standard III (sexual misconduct), and that Smith was not responsible for a violation of either Standard I or Standard III.  *Id.* ¶ 46; *see also* Ex. A at 34.  A copy of the Standards of Conduct is attached as Exhibit C.

The finding against Doe for violating Standard I was essentially uncontested, as Doe claimed no memory of the events at issue and it was beyond dispute that Smith suffered physical injuries during their encounter.  Ex. A at 8, 42.  The investigator found that while some of the injuries Smith sustained were caused by consensual light horseplay, Doe took things too far by causing physical injury when he slapped Smith in the face, chest, and arm; struck her arm with a closed fist; and attempted to choke her, which caused her face to swell and left significant bruising and a purple ring under her eye.  *Id.* at 42-44.

The investigator found Smith not responsible for sexual misconduct in violation of Standard III because she determined that, although Doe was intoxicated and did not recall the events of the evening in question, he was not incapacitated to the extent that he could not give consent.  *Id.* at 45-46.  He was not asleep, unconscious, mentally or physically helpless, or unaware that sexual activity was occurring.  *Id.*  Witnesses observed Doe walking, pouring drinks, and participating in conversations that evening.  *Id.* at 46.  In addition, the investigator credited Smith's statements that she and Doe had coherent discussions and that Doe directed most of their activities during their sexual encounter.  *Id.* at 47.

The investigator found Smith not responsible for violating Standard I because the injuries Doe suffered, including scratches and a puffy red nipple where blood had been drawn, were caused by Smith defending herself.  *Id.* at 47-48.  The investigator credited Smith's statements that she pinched and bit Doe and pushed him against the wall in an effort to make him stop hitting her and to prevent him from choking her. *Id.* at 48.

**C.      The sanction process**

On March 3, 2017, the Interim Director of Judicial Affairs, Katherine Strong, informed

Doe that she was convening a Sanctioning Panel pursuant to the Unified Procedures for Sexual

Assault, and that Doe had one week to submit a statement of impact to the sanctioning panel.

Compl. ¶ 47.  On March 9, 2017, Doe told Dean Strong that the Unified Procedures did not

allow for a panel acting under that policy to decide his sanction for a violation of Standard I, and

that the Committee on Standards (COS) instead must decide his sanction under the Disciplinary

Procedures that apply to cases other than sexual misconduct.  *Id.* ¶ 49.  A copy of the

Disciplinary Procedures is attached as Exhibit D.  Dean Strong responded that Doe was correct

about the policies, that his sanction would be determined by the COS under the Disciplinary

Procedures, and that she would be creating a one-and-a-half-page summary of the investigation

report to provide to the COS.  Compl. ¶ 51.  Doe alleges that Strong's one-and-a-half-page

summary of the investigation report failed to include relevant facts from the investigation and

failed to include information about the parties' agreement to resolve the case.  *Id.* ¶¶ 54-55.  A

copy of the summary is attached as Exhibit E.  It is a redacted excerpt from the investigator's

report, which explains the rationale for her findings of a Standard I violation by Doe (sans

footnotes).  *See* Ex. E.

Unlike the Unified Procedures, the Disciplinary Procedures do not provide for a separate

sanction panel process.  Ex. D at 3-4.  The Disciplinary Procedures provide that conduct

complaints are heard by the COS, which conducts a hearing in accordance with the procedures

set forth under the Rights, Rules, and Responsibilities section of the Student Handbook.  Ex. D at

4.  A copy of the rights, Rules, and Responsibilities is attached as Exhibit F.  The purpose of the

hearing is for the COS to determine whether the student committed a violation of the code of

conduct.  Ex. F at 7.  After the hearing, if the student is found responsible, the COS will recommend a sanction to the Chair.  Ex. D at 4.  The Disciplinary Procedures do not provide for a written sanction statement or set forth what information must be considered by the COS in determining a sanction.  *Id.*

The Disciplinary Procedures do not provide for written statements at the sanction phase.  Ex. D at 4.  Doe nevertheless submitted a statement to Dean Strong, in which he reported that he and Smith had reached an agreement to resolve the situation – specifically, Doe agreed to stay off-campus until Smith graduated.  Compl. ¶ 50.  Doe also asked Dean Strong for the opportunity to appear at a hearing before the COS or in the alternative to submit a written statement to the COS.  *Id.* ¶ 60.  Dean Strong denied the requests.  *Id.* ¶ 61.

The COS imposed a sanction of immediate separation from the College.  *Id.* ¶ 62.

**D.     The appeal process**

Doe was informed that he had the right to appeal, provided he set forth specific grounds for reconsideration as described in the Unified Procedures for sexual assault cases.  Compl. ¶¶ 63-64.  On April 5, 2017, Doe submitted an appeal of the investigator's findings of no responsibility for Smith and the sanction of dismissal for him, asserting that the investigator was biased against him, the investigator failed to apply the required preponderance of the evidence standard to his allegations against Smith, there were procedural irregularities in the sanctioning stage of the case, the sanctioning panel had not been provided relevant evidence, and the sanction in his case was disproportionate relative to other cases involving similar violations.  *Id.* ¶¶ 66-67.

The appeal was heard and denied by Rebecca Biron, Dean of the College.  *Id.* ¶¶ 68, 69.  Doe alleges that Dean Biron expressed biased views against men accused of sexual assault in a

2014 article entitled, "Behind Closed Doors:  Rape, Murder and the Misplaced Confidence of Men," and that her biased views influenced her decision to deny his appeal.  *Id.* ¶¶ 70-75.  A copy of the article is attached as Exhibit G.

      **E.**      **Alleged pressure on Dartmouth to respond harshly to allegations of violence against women**

Doe alleges that while the case against him was pending, there was significant attention at Dartmouth to issues of violence against women, including (a) more than 20 articles in *The Dartmouth*, the campus newspaper, about "sexual misconduct, most focused on instances of sexual misconduct at Dartmouth and Dartmouth's handling of those incidents," Compl. ¶¶ 76-77; (b) student performances addressing violence against women, *id.* ¶ 78; (c) the opening of a third investigation into Dartmouth's handling of sexual misconduct cases by the Department of Education's Office for Civil Rights (OCR), while earlier cases filed in 2013 and 2015 remained open, *id.* ¶ 79; (d) reported threats of violence against women on campus; (e) a rally in response to those reported threats, *id.* ¶ 80; and (f) a statement by Dartmouth's President, Philip J. Hanlon, that "sexual assault, gender-based harassment, interpersonal violence and stalking have no place in our community."  *Id.* ¶ 82.  Doe alleges that the College's disciplinary decisions in his case were made "against this backdrop" of "pressure … to respond harshly to allegations of violence against women."  *Id.* at p. 12, ¶ 83.

**DOE'S COMPLAINT**

The Complaint has four counts.  Count I alleges that Dartmouth discriminated on the basis of sex in violation of Title IX in two respects – (1) by selectively enforcing its policies in finding him responsible for misconduct while finding Smith, a female student, not responsible despite evidence indicating her responsibility, and (2) by virtue of procedural flaws in the disciplinary proceedings, which resulted from gender bias.  *Id.* ¶¶ 92-97.  Count II alleges that

8

Dartmouth breached its contract with him by prosecuting, investigating, and adjudicating his disciplinary case in violation of its policies and procedures.  *Id.* ¶¶ 98-102.  Count III alleges that Dartmouth breached the implied covenant of good faith and fair dealing by pursuing the investigation and adjudication in an unfair and biased manner.  *Id.* ¶¶ 103-106.  Count IV alleges that Dartmouth was negligent and breached its duty of care to Doe by pursuing its investigation and adjudication in a manner that deviated from its policies and was unfair and biased.  *Id.* ¶¶ 107-110.

STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the Court determines whether the complaint states a claim to relief that is "plausible on its face," accepting the well-pleaded factual allegations of the complaint as true, but not accepting statements that merely recite the elements of a cause of action or amount to legal conclusions.  *Salisbury v. Home Depot, U.S.A., Inc.*, No. 14-CV-260-JD, 2014 WL 6750648, at *1 (D.N.H. Dec. 1, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Iqbal*, 556 U.S. at 678 (citing *Twombly*).[3]

ARGUMENT

## I.  Count I Fails to State a Claim for Violation of Title IX.

Neither the First Circuit nor the District of New Hampshire has addressed Title IX in the context of student disciplinary proceedings.  Other courts have recognized four potential theories of liability under Title IX in this context:  "erroneous outcome," "selective enforcement,"

---

[3] The Second Circuit has adopted a more relaxed pleading standard for Title IX cases, which follows the *McDonnell Douglas* framework for Title VII discrimination cases, *i.e.,* the complaint must support only a "minimal plausible inference" of discriminatory intent in order to survive a motion to dismiss.  *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016).  The First Circuit, however, has declined to apply the *McDonnell Douglas* framework to Title IX claims.  *See Cohen v. Brown Univ.*, 991 F.2d 888, 902 (1st Cir. 1993).  The Sixth Circuit also has recently rejected the lower pleading standard for Title IX cases involving discipline for sexual misconduct.  *See Doe v. Miami Univ.*, No. 17-3396, 2018 WL 797451, at *5 (6th Cir. Feb. 9, 2018).

"deliberate indifference," and "archaic assumptions." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003).  The Complaint fails to state a claim under any of these theories.

## A.    Erroneous outcome

An "erroneous outcome" case is one in which the plaintiff alleges that he "was innocent and wrongly found to have committed an offense" as a result of gender bias.  *Doe v. Western New Eng. Univ.,* 228 F. Supp. 3d 154, 187 (D. Mass. 2017).  Doe's Complaint fails to state a claim for "erroneous outcome" because he does not allege that he "was innocent and wrongly found to have committed an offense."  He does not deny physically harming Smith, which is a violation of Standard I; to the contrary, he alleges that he was "blacked out" the entire time, and thus cannot comment on what happened.  *See* Compl. ¶¶ 2, 17, 18, 24.  Instead of alleging that he was "innocent," he claims it was wrong for him to be found responsible when Smith was not.  *See id.* ¶¶ 66, 97.  While such allegations might form the basis of a "selective enforcement" claim, they cannot support an "erroneous outcome" claim, which must be based on the plaintiff's own innocence.  *See Doe v. Amherst Coll.*, 238 F. Supp. 3d 195, 222 (D. Mass. 2017) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)); *see also Haidak v. Univ. of Massachusetts at Amherst*, No. 14-CV-30049-MAP, 2018 WL 1243956, at *20 (D. Mass. Mar. 9, 2018); *Stenzel v. Peterson*, No. CV 17-580 (JRT/LIB), 2017 WL 4081897, at *4 (D. Minn. Sept. 13, 2017); *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 7254213, at *5 (S.D. Ohio Nov. 17, 2015).[4]

---

[4] In *Doe v. Miami Univ.*, 2018 WL 797451,  the court held that the plaintiff stated an erroneous outcome claim where the plaintiff alleged he was drunk, did not remember what happened, and could not give a version of the events.  *Id.* at *8.  But that case is easily distinguished from this one.  Here, Doe does not dispute that he physically harmed Smith.  In contrast, whether the respondent in the Miami case actually violated the university's policy by engaging in non-consensual intercourse remained in doubt.  The complainant said both that she said "no" and did not say "no," and the panel that heard the case never reconciled that inconsistency.  *Id.*  The court found that this cast doubt on the validity of the proceedings.  *Id.*  In this case, there is no doubt that Doe physically harmed Smith, which is a violation of Standard I.

**B.       Selective enforcement**

"A selective enforcement claim requires a plaintiff to establish 'the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.' Unlike an erroneous outcome claim, a plaintiff can prevail on a selective enforcement claim without disturbing the factual findings made in a disciplinary proceeding." *Amherst Coll.*, 238 F. Supp. 3d at 222 (citing *Yusuf*, 35 F.3d 709 at 715).  "To support a claim of selective enforcement, a male plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Doe v. Columbia Coll. Chicago*, No. 17-CV-00748, 2017 WL 4804982, at *11 (N.D. Ill. Oct. 25, 2017) (citing *Yu v. Vassar College*, 97 F. Supp. 3d 448, 480 (S.D.N.Y 2015)); *see also Mallory*, 76 Fed. App'x at 641 (the situations must be "nearly identical").

The Complaint fails to state a "selective enforcement" claim.  Doe does not allege, for example, as in the *Amherst* case, that only the female student was encouraged to bring a complaint.  *See Amherst Coll.*, 238 F. Supp. 3d at 223.  In fact, in Doe's first interview with the Title IX Coordinator, he was asked if he wanted to make a complaint against Smith, which he initially declined to do.  Ex. A at 33 ¶149.  *See Stenzel*, 2017 WL 4081897 at *6 (dismissing selective enforcement claim where plaintiff made no allegation that he was not encouraged to file a report or was dissuaded from filing a report).  Nor was there any difference in the investigation of Doe's and Smith's complaints, as the investigator fully investigated the allegations on both sides and gave both students equal opportunities to present evidence and respond to the preliminary report.  *See* Compl. ¶¶ 33, 34, 41, 42, 45.

Nor do the investigator's findings provide a basis for a claim of selective enforcement. With respect to the allegations of sexual misconduct (Standard III), the investigator made the

same finding as to Doe and Smith – that neither student was responsible for a violation.  Compl. ¶ 46.  With respect to the allegations of assault (Standard I), the investigator did reach different conclusions – finding Doe responsible and Smith not responsible – but the two students were not similarly situated in relation to that charge.  Doe was found responsible for conduct markedly different from Smith's.  The investigator found that Doe slapped Smith in the face, chest and arms; struck her arm with a closed fist; and attempted to choke her.  Ex. A at 42.  The investigator made no such findings with respect to Smith.  In contrast, the investigator found that Smith injured Doe when she acted in self-defense – pushing Doe away with enough force that he hit the wall, pinching Doe and biting Doe, all in an effort to make him stop hitting and choking her.  *Id.* at 48.  In short, the investigator concluded that Smith acted in self-defense whereas Doe did not.  *Id.*[5]

Even if the Court were to conclude that the two students' situations were sufficiently similar to compare, Doe also would have to plausibly allege that Dartmouth's actions were motivated by gender in order to make out a claim of selective enforcement.  *See Yu*, 97 F. Supp. 3d at 480.  Conclusory allegations that Dartmouth was biased against men are not sufficient to survive a motion to dismiss.  *See Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016); *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154 at 188.

---

[5] The fact that a different investigator, or the Court, might have weighed the evidence differently or reached different conclusions is, of course, irrelevant.  It is not for the Court to second-guess the investigator's findings – to make judgments about the credibility of the witnesses or the weight of the evidence, or to determine whether it would have come to the same conclusion.  *See Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016) ("This Court is not a super-appeals court for sexual misconduct cases"); *Yu v. Vassar College*, 97 F. Supp. 3d 448, 461 (S.D.N.Y 2015) ("The Court's role, of course, is neither to advocate for best practices or policies nor to retry disciplinary proceedings."); *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 755 (E.D. Tenn. 2009) ("[T]his Court's review is substantially circumscribed; the law does not allow this Court to retry the University's disciplinary proceeding."); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 13 (D. Me. 2005) (same); *see also Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators.").

The Complaint fails to plausibly allege that gender bias was at work in this case. Doe has failed to allege that either the investigator who made the violation findings or the COS that determined Doe's sanction was motivated by gender. *Doe v. W. New England Univ.*, 228 F. Supp. 3d 154 at 188 (plaintiff must allege bias on the part of one or more University officials who played a role in the proceeding). Moreover, the mere fact that a female student was treated more favorably than a male student in a particular case does not, by itself, suggest disparate treatment because of gender. *See Stenzel*, 2017 WL 4081897, at *5 (collecting cases).

Doe alleges that Dean Biron, who denied his appeal, was biased, purportedly as evidenced by the article she published in 2014, in which she stated that men can have "misplaced confidence" as to whether a woman in fact consents to sexual conduct. Compl. ¶ 71. That article, however, fails to evidence any bias in relation to the handling of student conduct proceedings. The article does not say that all men are violent, that all men accused of sexual misconduct or relationship violence are guilty, or that women should be absolved of conduct for which men should be punished. *See* Ex. G. Nor does it say or suggest that a student conduct proceeding should be decided on any basis other than a neutral evaluation of the facts presented in that particular case. *See id.* Nor has Doe alleged facts to support any inference that Dean Biron's alleged bias infected the outcome of his case, especially in light of the fact that the article was written two-and-a-half-years before the events at issue. *See id.; see also Doe v. Univ. of Colorado, Boulder*, 255 F. Supp. 3d 1064, 1079 (D. Colo. 2017) (dismissing Title IX claim pursuant to Rule 12 (b)(6) where even "assuming Plaintiff has plausibly alleged [the investigator's] pro-female bias, the complaint contains no allegation showing that such bias affected the investigation process").

Doe's allegations about Dean Biron's article stand in contrast to *Doe v. Washington and Lee Univ.*, 2015 WL 4647996, at *10 (W.D. Va. Aug. 5, 2015), in which the court held that a plausible inference of bias on the part of a Title IX investigator could be drawn from statements she made at a presentation, in which she endorsed a particular article, where the article's message paralleled the specific circumstances of the case at hand.  The article stated that "sexual assault occurs whenever a woman has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express."  *Id.*  The case under investigation concerned a sexual encounter with a female student, which the male respondent claimed to be consensual.  *Id.*  The female student accused the respondent of sexual assault months later and only after she attended the Title IX investigator's presentation.  *Id.*

No such situation is presented in this case, which did not involve any question as to whether Doe had "misplaced confidence" about Smith's consent to sexual activity (the subject of Biron's article).  Indeed, there was no finding of sexual misconduct in this case.  Moreover, Doe did not claim that Smith "consented" to his physical assault.  As noted above, Doe disclaims any memory of the events and in any event "consent" is not a defense to a violation of Standard I. Ex. C at 6.

Nor do Doe's allegations about "pressure" on Dartmouth to "respond harshly to allegations of violence against women," Compl. at 12, ¶ 83, suffice to state a claim for selective enforcement.  This case is unlike *Doe v. Columbia Univ.,* 831 F.3d 46 (2d Cir. 2016), in which the court found it plausible the university adopted an anti-male bias in response to "substantial criticisms" of its handling of sexual misconduct cases.  *Id.* at 57.  The plaintiff in that case alleged that Columbia repeatedly had been criticized in the public media and by students for being lenient in handling sexual assault complaints, that the Title IX investigator also was

14

subject to criticism, and that both she and the president of university were not only aware of but sensitive to the criticism.  *Id.* at 58.  Doe makes no such allegations here.  He does not allege public media scrutiny or significant criticism of Dartmouth's handling of sexual assault cases. He merely references Dartmouth publications on the topic of campus sexual assault generally. Compl.  ¶¶ 77-82.  Also, in contrast to the facts in *Columbia*, Doe does not allege that the external investigator was affected by or even was aware of the alleged "pressures" on Dartmouth.  Moreover, the focus of that "pressure" was on sexual assault, as to which the investigator found in Doe's favor.

Nor does the fact that Dartmouth has been the subject of OCR investigations support an inference of undue pressure that resulted in gender bias.  *See Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F. Supp. 3d 1289, 1302 (D.N.M. 2017); *Univ. of Colorado, Boulder*, 255 F. Supp. 3d at 1079; *see also Miami Univ.*, 2018 WL 797451, at *9.

Nor has Doe alleged any disparate treatment of male students that would support an inference of gender bias, such as those alleged by the plaintiff in the *Miami University* case.  The plaintiff in that case alleged that every male student at Miami who was accused of sexual misconduct in 2013 and 2014 was found responsible, and that 90% of students found responsible for sexual misconduct from 2011 to 2014 had male names; the plaintiff also presented an affidavit from an attorney who had represented many students in disciplinary cases at the university, in which the attorney stated that the university had a pattern of pursuing investigations against males but not females.  *Miami Univ.*, 2018 WL 797451, at *9.  The Complaint in this case alleges no such facts.

### C.    Deliberate indifference

The Complaint does not appear to assert a "deliberate indifference" claim – a theory of liability under Title IX which applies to students, unlike Doe, who claim they were the victim of

sexual harassment or assault to which the university failed adequately to respond.  It is not a theory that applies to complaints about the handling or outcome of student disciplinary proceedings.  *See Miami Univ.*, 2018 WL 797451, at *5; *Saravanan v. Drexel Univ.*, No. CV 17-3409, 2017 WL 4532243, at *8 (E.D. Pa. Oct. 10, 2017); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 190 (D.R.I. 2016).

## D.    Archaic assumptions

To the extent that the Complaint indirectly invokes an "archaic assumptions" claim through its allegations about Dean Biron's article, that theory is inapposite here:  the "archaic assumptions" theory applies only to Title IX cases involving athletic opportunities, not student disciplinary proceedings involving sexual assault or other relationship violence.  *See Cummins*, 662 F. App'x at 452 (citing *Mallory,* 76 Fed. App'x at 638-39; *Marshall*, 2015 WL 7254213, at *8); *Saravanan*, 2017 WL 4532243, at *7 (citing *Doe v. Baum*, 227 F. Supp. 3d 784, 821 (E.D. Mich. 2017)); *Bleiler v. Coll. of Holy Cross,* No. CIV.A. 11-11541-DJC, 2013 WL 4714340 at *5 (D. Mass. Aug. 26, 2013) (citing *Mallory*, 76 Fed. App'x at 638-39).  Moreover, the article does not in fact reflect an "assumption that men are violent," Compl. ¶ 72, contrary to Doe's claim.  Rather, as noted above, the theme of the article is that some men act with "misplaced confidence," which sometimes leads to harmful conduct.

## II.    Count II Fails to State a Claim for Breach of Contract.

The college-student relationship is contractual in nature.  *Gamble v. Univ. Sys. of New Hampshire*, 136 N.H. 9, 13, 610 A.2d 357, 360 (1992).  The interpretation of that contract is a question of law for the Court, to which traditional contract principles apply, but in doing so the Court must take into account the distinctive nature of the college-student relationship.  *Id*.  The

contract, which may include student handbooks and policies, should be given the meaning that a reasonable student would ascribe to it. *Id*.

Doe alleges that Dartmouth breached its contract with him by instituting and prosecuting the case against him in violation of its established policies and procedures. Compl. ¶ 101. Specifically, Doe alleges that Dartmouth: (1) improperly commenced the investigation under the Unified Procedures for Sexual Assault; (2) improperly applied the Disciplinary Procedures by not providing an in-person sanction hearing or an opportunity to present a written sanction position statement and by submitting only a short summary of the investigation report to the sanction committee; and (3) improperly applied the Unified Procedures to his appeal. None of these allegations state a claim for breach of contract.

### A.  Dartmouth properly commenced the investigation under the Unified Procedures for Sexual Assault.

Doe alleges that Dartmouth should not have commenced and pursued the case under its Unified Procedures for Sexual Assault. Compl. ¶ 30. The Unified Procedures govern complaints of sexual assault, which is defined as, "unwanted or unwelcome touching of a sexual nature, including: fondling; penetration of the mouth, anus, or vagina, however slight, with a body part of object; or other sexual activity that occurs without valid consent." Ex. B at 3, 6.

Proceeding under the Unified Procedures was not a policy violation. A reasonable student should expect Dartmouth to proceed under the rules that apply to sexual misconduct cases where the original complainant's allegations included "non-consensual contact" during sexual activity, including but not limited to "fondling and dry humping while naked." Ex. A at 40, n. 51. Moreover, a few weeks after Smith filed her complaint, Doe initiated his own complaint alleging sexual assault (non-consensual sex), to which the Unified Procedures plainly applied. It obviously made sense to handle all of the cross-complaints by these two students in a

single process under the Unified Procedures and Doe reasonably should have expected

Dartmouth to do so in light of the clear language of the Unified Procedures:

> If, prior to or during the investigation of a complaint under this policy [the Unified Procedures], either party alleges a violation of other College policies or standards of conduct arising from the same set of facts [as the alleged sexual misconduct], all claims will ordinarily be investigated and have responsibility determined by the Investigator assigned to investigate the complaint under this policy … .

Ex. B at 11.

Moreover, it is undisputed that Doe never objected to Dartmouth's application of the

Unified Procedures until after the investigator made her findings.  He cannot now be heard to

complain that the case went forward under a process to which he made no objection at the time.

*See Nash v. Auburn Univ.*, 812 F. 2d 655, 661-62 (10th Cir. 1987).

> **B.      Dartmouth properly followed its disciplinary procedures on sanctions.**

Doe alleges that he was entitled to appear in person at a sanction hearing or to submit a

written statement at the sanction phase, as would have been the case if the sanction process went

forward under the Unified Procedures.  Compl. ¶ 56.  The Unified Procedures do not provide for

an in-person sanction hearing, although they do provide for a written "statement of position." *See*

Ex. B at 12-14.  However, it was Doe himself who requested that his sanction be decided under

the Disciplinary Procedures.  Compl. ¶ 49.  Having made that request, he waived any right to

insist on procedures that existed only under the Unified Procedures.  Unlike the Unified

Procedures, the Disciplinary Procedures do not provide for a written statement to be submitted at

a sanction phase.[6]

---

[6] The statement by Dartmouth's then General Counsel on February 8, 2017, that Doe could share information with the "sanctioning panel," was plainly a reference to the Sanction Panel under the Unified Procedures.  In any event, one isolated statement by a college employee does not operate to change a policy.  *See Doe v. Trustees of Boston Coll.,* 2016 WL 5799297, at *10 (D. Mass. Oct. 4, 2016).

Doe also argues that he was entitled to a hearing at the sanction phase because the Disciplinary Procedures provide that "where, after a hearing, the COS finds a student responsible for one or more violations, it will then recommend a sanction to the Chair … ."  Compl. ¶ 58. The meaning of that passage is unambiguous:  the hearing to which it refers is one in which a student is found responsible or not responsible – a hearing that would have occurred if the fact-finding phase were handled under the Disciplinary Procedures, whereas the Unified Procedures involve no such hearing.  *See* Ex. D at 4.  The Disciplinary Procedures do not require a sanction hearing, nor any other specific process by which the COS should arrive at a sanction recommendation.  *See id.*

Nor is Doe's argument supported by his citation to the "Rights, Rules, and Responsibilities" section of Student Handbook.  *See* Compl. ¶¶ 52, 58.  That section pertains to COS hearings, not to determinations made under the Unified Procedures.  Ex. D at 4 ("In all … Standards of Conduct cases referred to the COS, the COS will conduct a hearing in accordance with the procedures set forth under Rights, Rules, and Responsibilities.").  Doe's case was not referred to the COS; rather, after he was found responsible under the Unified Procedures, only his sanction was determined by the COS.  A student reasonably would understand that in the unique circumstances of this case, where the determination of responsibility already was made by an investigator and the facts already were established, there would be no occasion to conduct a hearing.

Nor is there any merit to Doe's argument that Dartmouth breached its contractual obligations by providing the COS only the relevant rationale section of the investigation report and withholding from the COS information about Doe's agreement with Smith.  Compl. ¶¶ 54-55.  Again, the Disciplinary Procedures do not contain any specific requirements in relation to

the information that must be shared with the COS to determine a sanction.  Ex. D at 4.

Moreover, it is important to note that the sanction process did not involve any appeal from or

review of the investigator's findings.  In that respect, it made sense for the COS to receive only a

succinct summary of what the investigator found, rather than requiring the COS to review the

full 531-page report (including exhibits) of the investigation.

      **C.**    **Dartmouth properly applied the Unified Procedures on appeal.**

Doe appears to argue that Dartmouth violated is policies by handling his appeal under the

Unified Procedures, rather than the Disciplinary Procedures.  Compl. ¶ 6.  There was no policy

violation.  The Unified Procedures say only that the sanction for a finding of responsibility is

determined by the "disciplinary system of the Responding Person's school."  Ex. B at 11.  The

Unified Procedures do not say that appeals also must be determined by the disciplinary system of

the Responding Person's school.  *Id.*  A reasonable student would expect an appeal to be

considered pursuant to the same rules under which the matter was adjudicated, unless the rules

specifically provide otherwise.  Here, they do not.  Moreover, under the Unified Procedures, Doe

had an opportunity to appeal the finding on his complaint that Smith was not responsible for

sexual misconduct, which in fact he did.  In fact, his appeal of the Standard III finding in favor of

Smith could only have been heard under the Unified Procedures.  *Id.*  Therefore, as Doe's appeal

was properly considered under the Unified Procedures, it made sense to handle the appeal of the

findings as to both students and his sanction in a single process.

**III.**    **Count III Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

"Under New Hampshire law, every contract contains an implied covenant of good faith

performance and fair dealing."  *Renovest Co. v. Hodges Dev. Corp.*, 135 N.H. 72, 81, 600 A.2d

448, 454 (1991).  "Although the implied duty of good faith and fair dealing can limit a party's

discretion in certain circumstances, the duty does not abrogate the principle that '[p]arties generally are bound by the terms of an agreement freely and openly entered into, and courts cannot make better agreements than the parties themselves have entered into or rewrite contracts merely because they might operate harshly or inequitably.'"  *Milford-Bennington R. Co. v. Pan Am Railways, Inc.*, No. 10-CV-00264-PB, 2011 WL 6300923, at *5 (D.N.H. Dec. 16, 2011), aff'd, 695 F.3d 175 (1st Cir. 2012) (quoting *Mills v. Nashua Fed. Sav. & Loan Ass'n*, 121 N.H. 722, 726, 433 A.2d 1312, 1314 (1981)).

Doe argues that Dartmouth breached the implied covenant of good faith and fair dealing by pursing the investigation and adjudication of the complaint against him in an unfair and biased manner.  Compl. ¶ 105.  Doe's claim for breach of the implied covenant thus rests on the same allegations as his breach of contract claims, and fails for the reasons set forth above: Dartmouth has complied with its policies and procedures and Doe's reasonable expectations about them.  The Court should decline Doe's invitation to find "implied covenants" that would impose disciplinary procedures different from or in addition to those that the College itself has adopted.  *See Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007) (applying Rhode Island) ("[g]ood faith and fair dealing cannot be separated from context ... and in evaluating those covenants in the educational milieu, courts must accord a school some measure of deference in matters of discipline."); *see also Bleiler*, 2013 WL 4714340, at *17; *Sullivan v. Boston Architectural Ctr., Inc.*, 57 Mass. App. Ct. 771, 775, 786 N.E.2d 419, 422 (2003).

## IV.    Count IV Fails to State a Claim for Negligence.

To state a claim for negligence under New Hampshire law, the plaintiff must "establish that the defendant owed a duty to the plaintiff, breached that duty, and that the breach

proximately caused the claimed injury." *Estate of Joshua T. v. State*, 150 N.H. 405, 407, 840 A.2d 768, 771 (2003) (quotations and citations omitted).

Doe contends that Dartmouth breached a "duty of care, imposed on it by its polices and voluntarily undertaken, to handle allegations of sexual misconduct and/or violence fairly and consistently." Compl. ¶ 108. No such tort duty exits, however, either as a matter of Dartmouth's own policies or as one "voluntarily undertaken." Doe's argument that a duty of care arose from Dartmouth's own policies is an argument that Dartmouth had a duty not to negligently perform its contract with him. That is contrary to New Hampshire law, which "does not recognize a cause of action for the negligent performance of a contract." *PK's Landscaping, Inc. v. New England Tel. and Tel. Co.*, 128 N.H. 753, 519 A.2d 285, 288 (1986); *see also Lawton v. Great Southwest Fire Ins. Co.*, 118 N.H. 607, 392 A.2d 576, 580 (1978); *Barrett v. New England Tel. and Tel. Co.*, 80 N.H. 354, 117 A. 265, 265 (1922). Other courts in this Circuit have rejected purported claims for negligence in the handling of student disciplinary proceedings for similar reasons. *See Doe v. Trustees of Boston Coll.*, 2016 WL 5799297, at *28; *Brown Univ.*, 166 F. Supp. 3d at 196.

Nor is there any merit to Doe's argument that Dartmouth "voluntarily under[took]" a duty in tort. Compl. ¶ 108. The "voluntary undertaking" doctrine arises under Restatement (Second) of Torts § 323 (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other **for physical harm** resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. (Emphasis supplied.)

Section 323 by its plain terms applies only to cases, unlike this one, in which the plaintiff has suffered "physical harm." *Schaefer v. Indymac Mortg. Servs.,* 731 F.3d 98, 104 (1st Cir. 2013).

Doe's purported negligence claim also is barred by the economic loss doctrine, which provides that parties to a contractual relationship in New Hampshire cannot pursue "tort recovery for purely economic or commercial losses associated with [that] relationship." *Wyle v. Lees*, 162 N.H. 406, 410, 33 A.3d 1187, 1190 (2011) (citing *Plourde Sand & Gravel v. JGI Eastern*, 154 N.H. 791, 794, 917 A.2d 1250 (2007)). *See also Galvin v. EMC Mortg. Corp.*, No. 12-CV-320-JL, 2013 WL 1386614, at *10 (D.N.H. Apr. 4, 2013) ("the [economic loss] doctrine applies without regard to whether the plaintiff seeks an award of damages to remedy a past loss or an injunction to prevent future loss"). Doe's negligence claim violates the economic loss doctrine because it arises from his contractual relationship with Dartmouth and the Complaint plausibly claims only economic losses. While Doe alleges that he suffered "stress and mental anguish" as a result of Dartmouth's actions, Compl. ¶ 90, he has failed to allege physical symptoms sufficient to state a claim for emotional distress damages. *See Exeter Hosp., Inc. v. Kwiatkowski*, No. 14-CV-009-SM, 2016 WL 6459568, at *4 (D.N.H. Oct. 31, 2016) (granting motion to dismiss negligence claim for emotional distress damages where plaintiff failed to allege physical symptoms from emotional distress).

## CONCLUSION

The Court should dismiss the Complaint for failure to state a claim.

TRUSTEES OF DARTMOUTH COLLEGE

/s/ Elizabeth H. Kelly
Daryl J. Lapp (admitted *pro hac vice*)
   daryl.lapp@lockelord.com
Elizabeth H. Kelly (admitted *pro hac vice*)
Katherine A. Guarino (#264846)
LOCKE LORD LLP
111 Huntington Avenue
Boston, Massachusetts 02199
March 19, 2018                              (617) 239-0100

## Certificate of Service

I certify that on March 19, 2018, I caused the foregoing document to be served on counsel of record for all parties that have appeared to date through the Court's CM/ECF system.

/s/ Elizabeth H. Kelly
Elizabeth H. Kelly

AM 68109975.2