UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

John Doe

    v.                                                     Civil No. 18-cv-040-LM
                                                             Opinion No. 2018 DNH 088

Trustees of Dartmouth College

**O R D E R**

Plaintiff brings this lawsuit against defendant Trustees of Dartmouth College ("Dartmouth"), alleging violations of his rights under Title IX, along with a number of related state-law claims. Contemporaneously with his complaint, plaintiff filed a motion to proceed under the pseudonym "John Doe" (doc. no. 2). Dartmouth takes no position on the motion. For the following reasons, plaintiff's motion is granted.

**BACKGROUND**

Plaintiff's central claim is that Dartmouth discriminated against him on the basis of his sex when it expelled him for misconduct stemming from a drunken sexual encounter with a female student. A detailed recitation of the allegations in the complaint is necessary to understand the context of plaintiff's desire for anonymity.

Plaintiff alleges that, in August 2016, while a student at Dartmouth, he engaged in sexual contact with a female student—

hereinafter referred to by the pseudonym "Sally Smith"—after a fraternity party. Plaintiff describes Sally as the sexual aggressor, and as someone he knew to be interested in sadomasochistic sex. Plaintiff claims that he "blacked out" from intoxication before the encounter and had no memory of seeing Sally that night. The next morning, plaintiff awoke to find Sally in his bed, and the two engaged in consensual sexual intercourse. Sally then explained what had occurred the previous night, and stated that "things had gotten a bit 'rough.'" Doc. no. 1-3 at ¶ 18. Plaintiff told Sally that he had no memory of the previous night. When Sally left his room, plaintiff fell back to sleep.

Plaintiff alleges that when he woke up, he was in physical pain. He had bruises and scratches on his back, his nipple was bleeding, and he felt "extreme pain" in his genitalia. Plaintiff claims that Sally sent him a text message that day, describing the night as "fun" and enclosing photos of herself that showed bruises on her body. Later that day, they met to talk, and Sally stated that they had engaged in "rough foreplay" and slapping, and had fallen off the bed multiple times. Id. at ¶ 23. Sally also told plaintiff that he had asked her to leave several times on that night.

In October 2016, Sally filed a complaint against plaintiff with Dartmouth's Title IX office. She alleged that plaintiff had physically assaulted her during their sexual encounter in August, but she told a Dartmouth official that the sexual contact was itself consensual. After receiving the complaint, Dartmouth notified plaintiff that it was instituting an investigation into whether he had violated standards governing both physical and sexual misconduct. On November 2, 2016, plaintiff filed a complaint against Sally, alleging that his intoxication rendered him incapable of consenting to the sexual encounter on August 4, and that she had caused him physical harm during that encounter. Dartmouth jointly investigated both complaints.

According to plaintiff, his version of events was borne out by the evidence. After receiving the preliminary report and factual findings, Sally and plaintiff communicated to Dartmouth that they had reached an agreement and wished to terminate the investigation. Thereafter plaintiff filed a written response to the preliminary report, noting its alleged inaccuracies and discrepancies.

On March 3, 2017, Dartmouth notified plaintiff that it found a violation of the physical misconduct standard (i.e., placing another student at risk of physical harm), but found no

3

violation of the sexual misconduct standard.  Dartmouth found that Sally had not violated either standard.

Dartmouth then instituted the process to determine the sanction.  Plaintiff alleges that, over his objection, Dartmouth deprived him of the ability to appear before or write to the people deciding his sanction.  Dartmouth decided that expulsion was the appropriate sanction.  Plaintiff appealed that sanction, and it was upheld.  Plaintiff alleges that the appellate decision-maker was biased against him because of his gender, and that her bias was evident in an article she had written in 2014 about sexual assault on college campuses.

Plaintiff further alleges that the climate at Dartmouth infected his investigation with gender bias.  He claims that his investigation occurred at a time when students were hyperfocused on allegations of violence against women, and while Dartmouth was under federal investigation for its handling of sexual misconduct complaints.

Plaintiff brought this action in January 2018, raising claims for violation of Title IX, breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence.  On March 19, 2018, the court held a hearing on the present motion.

4

**DISCUSSION**

Plaintiff argues that, given the nature of the underlying facts and Dartmouth's findings, his reputation, career prospects, and mental health will be significantly damaged if he is not permitted to proceed under a pseudonym. He contends that the mere public identification of a person "accused of and found responsible for assault by a college is severe and can have life-long effects on the [person's] ability to complete his education and gain employment," and can also increase the likelihood that the person will be the target of threats, harassment, and intimidation. Doc. no. 21 at 4. He maintains that, if the court requires him to reveal his identity, the purpose of his lawsuit will be defeated and the very harms he is trying to undo will be compounded and exacerbated.

Before delving into the merits, however, there is a threshold question to address regarding the appropriate standard of review. As plaintiff notes, neither the U.S. Supreme Court nor the First Circuit has definitively articulated the circumstances under which a plaintiff may use a pseudonym. Plaintiff relies on certain balancing tests developed by other federal courts of appeals to support his position. At the hearing, the court expressed some skepticism as to whether it should apply one of these balancing tests over the First

Circuit's test for determining whether to seal judicial records. Plaintiff has filed a supplemental memorandum further expanding on his view of the relevant law.

Therefore, the court begins by addressing the appropriate standard of review, before applying that standard to the circumstances presented. As will be discussed below, the court concludes that plaintiff may proceed under a pseudonym, at least during pretrial proceedings.

I. Standard of Review

The starting point for the court is the Federal Rules of Civil Procedure, which "make no provision for pseudonymous litigation." Qualls v. Rumsfeld, 228 F.R.D. 8, 10 (D.D.C. 2005); see also Femedeer v. Haun, 227 F.3d 1244, 1246 (10th Cir. 2000) (stating that "there does not appear to be any specific statute or rule supporting the practice" of pseudonymous litigation). Rather, Rule 10(a) requires that the caption of a complaint name all of the parties. "This rule serves more than administrative convenience. It protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." Plaintiff B v. Francis, 631 F.3d 1310, 1315 (11th Cir. 2011) (quotation omitted).

Nevertheless, many circuit courts "have condoned pseudonymous litigation." Qualls, 228 F.R.D. at 10 (collecting

6

cases); see, e.g., Doe v. Megless, 654 F.3d 404 (3d Cir. 2011); Francis, 631 F.3d at 1315-16; Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185 (2d Cir. 2008). While recognizing that one of the "essential qualities of a Court . . . is that its proceedings should be public," courts have accepted that exceptional circumstances may justify the use of a pseudonym, including in cases involving "abortion, birth control, transsexuality, mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." Megless, 654 F.3d at 408 (internal brackets omitted); see also Francis M. Dougherty, Propriety and Effect of Use of Fictitious Name of Plaintiff in Federal Court, 97 A.L.R. Fed. 369 (1990) (collecting cases).[1]

The First Circuit has yet to explicitly permit the practice. In the related context of a request to seal judicial records, however, the First Circuit makes clear that the "starting point must always be the common-law presumption in

---

[1] There has also been a significant amount of scholarship on the question. See, e.g., David S. Ardia, Court Transparency and the First Amendment, 38 Cardozo L. Rev. 835 (2017); Benjamin P. Edwards, When Fear Rules in Law's Place: Pseudonymous Litigation As a Response to Systematic Intimidation, 20 Va. J. Soc. Pol'y & L. 437 (2013); Lior J. Strahilevitz, Pseudonymous Litigation, 77 U. Chi. L. Rev. 1239 (2010); Donald P. Balla, John Doe is Alive and Well: Designing Pseudonym Use in American Courts, 63 Ark. L. Rev. 691 (2010); Jayne S. Ressler, Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age, 53 U. Kan. L. Rev. 195 (2004); Joan Steinman, Public Trial, Pseudonymous Parties: When Should Litigants Be Permitted to Keep Their Identities Confidential?, 37 Hastings L. J. 1 (1985).

favor of public access."  Nat'l Org. For Marriage v. McKee, 649 F.3d 34, 70 (1st Cir. 2011).  "[P]ublic access to judicial records and documents allows the citizenry to monitor the functioning of our courts," which ensures "quality, honesty and respect for our legal system."  Id. (internal quotation marks removed).  "[O]nly the most compelling reasons can justify" the sealing of a judicial record.  Id. (internal quotation marks removed); see also F.T.C. v. Standard Fin. Mgmt. Corp., 830 F.2d 404, 412 (1st Cir. 1987) (describing test as one requiring a showing of "exceptional circumstances" to "overbear the public's right of access").

It is the burden of the party asking for secrecy to make a showing sufficient to overcome the presumption.  McKee, 649 F.3d at 71.  In applying the balancing test in this Circuit, the district court must be mindful that "the scales tilt decidedly toward transparency."  Id. at 70.  The balance "must be struck, of course, in light of the relevant facts and circumstances of the particular case."  F.T.C., 830 F.2d at 410 (internal quotation marks omitted).

Two cases illustrate the First Circuit's approach.  In McKee, the First Circuit upheld the lower court's decision to make public previously sealed trial documents in a suit concerning the constitutionality of certain state election laws.

McKee, 649 F.3d at 40-41. The plaintiff, National Organization for Marriage ("NOM"), claimed that the documents should remain sealed because release would "severely burden" NOM's ability to engage in political activities, would invade the privacy of its third-party contractors, and would subject those contractors to harassment. Id. at 71.

The court was not persuaded by NOM's arguments, finding that they lacked support in the record. Specifically, NOM failed to identify "any specific information that, if made public, would damage or chill its political advocacy efforts," and its claim regarding harm to contractors rested upon allegations of harassment that occurred to contractors in a completely different, albeit highly-charged, political campaign. Id. at 71-72. The court noted, however, that "privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records." Id. at 72.

In F.T.C., the First Circuit upheld the lower court's decision to make public personal financial statements of defendants—owners of corporations—in a deceptive trade action brought by the Federal Trade Commission. F.T.C., 830 F.2d at 408-09. The defendants claimed that release of the documents would "intrude impermissibly upon their privacy (and that of

9

their families)." Id. at 411. In reviewing that claim, the court noted that the fact that a government agency was a party weighed heavily in favor of public access. Id. at 412. And, in the end, disclosure was warranted because defendants failed either to point to "a single particularized harm which might befall them" or to substantiate with affidavits or other evidence the "broad generalization" that disclosure would be harmful to their privacy interests. Id.; see also id. (stating that a "naked conclusory statement of feared injury falls woefully short of the kind of showing which raises even an arguable issue" (quotation and brackets omitted)).

These cases enunciate certain guiding principles that must attend this court's analysis of plaintiff's motion, including the presumption of public access and the need for a compelling countervailing interest to justify limitations to that access. But, beyond that, the First Circuit has not addressed the particular question at issue here.

For that reason, this court turns to the standards developed by other courts of appeal. Although circuit courts are generally "in agreement that district courts should balance a plaintiff's interest and fear against the public's strong interest in an open litigation process," they present slightly different lists of relevant factors. Megless, 654 F.3d at 408.

The Third Circuit set forth one such balancing test in Doe v. Megless, 654 F.3d 404 (3d Cir. 2011). Under that test, the district court's task is to "determine whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation." Megless, 654 F.3d at 409. It is not enough that the plaintiff may suffer embarrassment or economic harm as a result of public identification; the plaintiff must show both a fear of severe harm and that the fear is reasonable. Id. at 408. The Third Circuit has adopted a non-exhaustive set of nine factors that should be considered:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; [] (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives . . . . [(7)] the universal level of public interest in access to the identities of litigants; [(8)] whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and [(9)] whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

Id. at 409.

The Third Circuit's test is consistent with the overall aim of the First Circuit's framework for sealing judicial records, insofar as the district court must proceed from the presumption of an open litigation process and may only limit such access in compelling circumstances. Accordingly, this court will apply the Third Circuit's test in evaluating plaintiff's motion.

II. Analysis

The court begins by examining the first six factors of the Megless test, which, if satisfied, favor anonymity. See id.

First is the extent to which the identity of the litigant has been kept confidential. Plaintiff asserts that he has avoided publicity in the matter and that Dartmouth's disciplinary process was itself confidential. Nothing in the record suggests that plaintiff's identity is publicly known.[2] This factor supports plaintiff's position.

The second factor is the basis upon which disclosure is feared or seeks to be avoided, and the substantiality of that basis. Here, plaintiff contends that public identification will significantly harm his reputation, as well as future educational

---

[2] Plaintiff does state that individuals in his immediate social circle "learned about the allegations from Sally Smith," doc. no. 22-2 at ¶ 6, but that his identity has not been more widely disseminated in the Dartmouth community or amongst the general public.

12

and career prospects.  He also states that he may be subjected to harassment if he is publicly identified.

Based on the evidence presented by plaintiff, the court is persuaded that these potential harms are severe and reasonable. Undoubtedly, "one's sexual practices are among the most intimate parts of one's life," and the public disclosure of such information may subject one to embarrassment or ridicule. Doe v. Blue Cross & Blue Shield of R.I., 794 F. Supp. 72, 74 (D.R.I. 1992) (discussing in context of transgender plaintiff).  Still, mere embarrassment does not generally suffice to permit the use of a pseudonym.  See, e.g., Doe v. Word of Life Fellowship, Inc., No. 11-40077-TSH, 2011 WL 2968912, at *2 (D. Mass. July 18, 2011).

More significant in this case is plaintiff's argument that public disclosure will subject him to reputational damage and will impair his future educational and career prospects, regardless of the actual outcome of this action.  Plaintiff cites other campus sexual-assault cases to show that the mere accusation that one has committed a sexual assault can subject the accused to lasting reputational damage and harassment, even where, as here, the accused is ultimately found not culpable of sexual assault.  See doc. no. 21 at 6-7 (discussing other cases).  Such a concern is only exacerbated in the Internet age,

13

which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation. Cf. Francis, 631 F.3d at 1318 (noting that, absent anonymity, plaintiff would be forever linked to certain pornographic videos); Doe v. Cabrera, 307 F.R.D. 1, 7 (D.D.C. 2014) (in suit alleging sexual assault against professional baseball player, stating that "[h]aving the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma").

Thus, this is not a case where, far from damaging plaintiff's reputation, the litigation will afford plaintiff an opportunity to "clear his name in the community." Megless, 654 F.3d at 410. Plaintiff has a reasonable fear that, whatever the outcome of the action, public identification will subject him to severe reputational harm and harassment, and will defeat the very purpose of this litigation.

Even more salient to the court is Sally Smith's interest in anonymity. Should plaintiff be publicly identified, Sally would likely be identified as well, and Sally has a stronger case for anonymity. Unlike a litigant, who in "using the courts must be prepared to accept the public scrutiny that is an inherent part

14

of public trials," Femedeer, 227 F.3d at 1246, Sally Smith is a nonparty.  Furthermore, Dartmouth has submitted a declaration from Sally Smith, in which she states that plaintiff's complaint has already generated "hateful and threatening comments about [her] on the internet," causing her "extreme emotional distress and trauma."  Doc. no. 17-2 at ¶ 13.

Given the underlying facts of this case, in conjunction with the evidence presented by the parties, the court finds reasonable plaintiff's and Sally's fears relating to public identification.  Accord Doe v. Colgate Univ., No. 5:15-cv-1069, 2016 WL 1448829, at *2 (N.D.N.Y. Apr. 12, 2016) ("[C]ases stemming from investigations of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both the plaintiffs in these cases and their accusers."); Doe v. Purdue Univ., 321 F.R.D. 339, 342-43 (N.D. Ind. 2017).  The second factor weighs in plaintiff's favor.

The third factor concerns whether there is a public interest in maintaining the plaintiff's anonymity.  In other words, "if this litigant is forced to reveal his or her name, will other similarly situated litigants be deterred from litigating claims that the public would like to have litigated?" Megless, 654 F.3d at 410.  Plaintiff does not develop an

argument on this factor, so the court considers it to be neutral.  Cf. McKee, 649 F.3d at 71 (noting that it is the party seeking to keep documents sealed who must make a sufficient showing).  That being said, the court notes that there is authority for the proposition that precluding pseudonymous litigation in college disciplinary cases may have a chilling effect on future plaintiffs who seek to challenge the adequacy of the process.  See Colgate Univ., 2016 WL 1448829, at *3.

The fourth factor is whether there is an atypically weak public interest in knowing the litigant's identities given the purely legal nature of the issues presented or otherwise. Megless, 654 F.3d at 409.  Contrary to plaintiff's argument, the issues presented in this case are not purely legal.  The dispute is over how Dartmouth applied its policies in plaintiff's case, how it came to its determination of the underlying facts, and whether the procedure was tainted by any bias.  This factor does not weigh in plaintiff's favor.

The question for the fifth factor is whether "the litigant [will] sacrifice a potentially valid claim simply to preserve [his] anonymity."  Id. at 410.  Because plaintiff avers that he will not prosecute his claims if he must do so in his own name, this factor weighs in plaintiff's favor.

The sixth factor turns on whether the litigant is seeking to use a pseudonym for nefarious reasons. There is no such allegation in this case, so this factor supports plaintiff's request.

The court now examines the remaining three factors disfavoring anonymity. See id. at 409. The seventh factor amounts to an acknowledgement that there is a "universal interest in favor of open judicial proceedings," which weighs in favoring of disclosing plaintiff's identity. Id. at 411.

The eighth factor concerns whether there is a stronger public interest in knowing the litigant's identity, in light of the subject matter of the litigation, the status of the litigant as a public figure, or any other reason. Id. at 409. None of the relevant actors in this litigation is a public figure. This litigation concerns not public officials or governmental entities, but a disciplinary process at a private college relating to an alleged assault of one college student by another. In addition, the public's interest in the subject matter of, or any proceedings relating to, this litigation, will not be impeded merely because plaintiff's identity is kept private. See Purdue Univ., 321 F.R.D. at 343 ("The actual identities of Plaintiff and his accuser are of minimal value to the public."). This factor does not favor disclosure.

17

The ninth and final factor is whether any opposition to the use of a pseudonym is illegitimately motivated. There is no such opposition, so this factor favors plaintiff.

Considering all of these factors, the court concludes that plaintiff may proceed under a pseudonym. The above-described considerations—in particular, the reasonable concern of both plaintiff and Sally Smith that they will be subjected to harassment and reputational damage absent anonymity, regardless of the outcome of this litigation—outweigh the public interest favoring public identification and open proceedings. Accord id. at 342 (collecting cases).

There is one caveat, however. As plaintiff acknowledges, the calculus regarding the use of a pseudonym may change depending on the stage of the litigation. See, e.g., Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1069 (9th Cir. 2000) (court should evaluate use of pseudonym "at each stage of the proceedings"); Cabrera, 307 F.R.D. at 10 (prejudice from use of pseudonym may increase during trial stage). At this point, therefore, the court's order is limited to pretrial proceedings. Should the case proceed to trial, the court may re-evaluate the use of a pseudonym.

## CONCLUSION

For the reasons stated herein, plaintiff's motion to proceed under a pseudonym (doc. no. 2) is granted. To effectuate that result, the court issues the following protective order:

(a) The parties shall use the pseudonyms "John Doe" for the plaintiff and "Sally Smith" for the female complainant in the underlying disciplinary proceeding; and

(b) The parties shall redact the true names of John Doe and Sally Smith from all documents in this case and refrain from revealing their true identities.

This protective order shall remain in effect until such time as a further order is issued.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 2, 2018

cc: Counsel of Record